UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GALVESTON, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cv-02676-SEB-TAB |
| ) | |
| MORRIS INVEST, LLC, ) | |
| CLAYTON MORRIS, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS**

This cause is before the Court on Defendants' Partial Motion to Dismiss [Docket No. 17], filed on September 16, 2019 pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiff Galveston, LLC, brings this action against Defendants Clayton Morris and Morris Invest, LLC ("Morris Invest").[1] Plaintiff alleges several causes of action relating to an Indianapolis-area home allegedly purchased by

---

[1] This matter originated as between fourteen sets of plaintiffs and Morris Invest. On June 13, 2019, the case was severed by the Honorable William T. Lawrence on the grounds that each set of plaintiffs had its own independent, transactional relationship with the defendants. *Mcleskey et al V. Morris Invest, LLC et al.*, 1:18-cv-02797-JPH-TAB, [Docket No. 35]. Accordingly, the matter was severed, and the various plaintiffs filed their own respective actions. The undersigned has been assigned two of these cases. *See* 1:19-cv-02667-SEB-TAB, 1:19-cv-02676-SEB-TAB. Notwithstanding Judge Lawrence's conclusion that the experiences of the various plaintiffs were "similar, not identical," the two cases assigned to the undersigned are, at this stage, nearly identical in terms of the facts alleged and the legal arguments raised in the parties' briefing on the present motion. Indeed, the two sets of plaintiffs entered into identical contracts with Morris Invest, albeit involving different properties and dates of transaction. Accordingly, our findings in this entry follow our findings in our dismissal order, Docket No. 29, in *DL3 Properties, LLC IN1801 v. Morris Invest, LLC et al*, 1:19-cv-02667-SEB-TAB.

Plaintiff from Defendants as investment property. Specifically, Plaintiff alleges the following claims: breach of contract, promissory estoppel, fraud/deception, conversion, negligence, and violation of the Indiana Deceptive Consumer Sales Act (IDCSA).

For the reasons detailed below, we GRANT Defendants' Partial Motion to Dismiss with respect to Plaintiff's breach of contract claim for tenant services and property-management services, its promissory estoppel claim for rehabilitation of the property, its fraud/deception claim, its conversion claim, its negligence claim, and its claim based on the IDCSA; however, we DENY Defendants' Partial Motion to Dismiss with respect to Plaintiff's breach of contract claim for rehabilitation of the property and its promissory estoppel claim for tenant services and property-management services.

## Factual Background

Plaintiff[2] alleges that beginning in March 2018 a representative of Defendants, Glenn Radford, "made representations" through phone calls, emails, Youtube videos, and podcasts "that Defendants were offering 'turnkey' real estate investment opportunities." Compl. ¶ 3, 41. Based on these representations, Plaintiff purchased a single-family home in Indianapolis[3] "from and through Defendants, to be used as rental property for the purpose of generating 'passive' rental income to Plaintiff." *Id.* ¶ 25, 41. Plaintiff alleges it was told that Defendants would rehabilitate the property; find, screen, and secure tenants

---

[2] Plaintiff, Galveston, LLC,, is an entity owned entirely by Debra and Christopher Thomas, citizens of Arizona. Compl. ¶ 8.
[3] On March 27, 2018, Plaintiff purchased a home at 3415 Brouse Ave, Indianapolis, IN 46218. Ex. 1.

for the property; manage the property; and collect rent checks for Plaintiff. *Id.* ¶¶ 26-27, 43.

Plaintiff discovered that, contrary to what it had been led to believe, "Morris Invest and Clayton Morris are only marketers." *Id.* ¶ 17. In fact, "Defendants use or used Oceanpointe Investments Limited ("Oceanpointe"), Indy Jax Wealth Holdings, LLC, and/or Indy Jax Property, LLC to handle identification, sale, rehabilitation, tenant location, and property management of the Rental Property." *Id.* ¶ 19. Although prior ownership of the property is never clearly alleged,[4] Clayton Morris is a signatory on the Purchase Agreements. Ex. 1.

Eventually, Plaintiff began to receive code violation notices on the property and was forced to sell the property for a $32,900 loss. *Id.* ¶ 41. Plaintiff now brings this action for breach of contract, promissory estoppel, fraud/deception, conversion, negligence, and a violation of the IDCSA. Defendants have moved to partially dismiss Plaintiff's claims. We address these issues in turn.

## Legal Analysis

**I.      Standard of Review**

Defendants have filed their motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pled factual allegations in the complaint and draws all

---

[4] Plaintiff alleges it "purchased one single-family home from and through Defendants," Compl ¶ 25. However, Plaintiff also refers to the property as "Oceanpointe's" and refers to Defendants as only marketers. *Id.* ¶ 17, 24.

3

ensuing inferences in favor of the non-movant. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009). Nevertheless, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* FED. R. CIV. P. 8(a)(2). While the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for [an] imperfect statement of the legal theory supporting the claim asserted," *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014), the claim asserted must still be "legally cognizable." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). If the factual allegations of the complaint, taken as true, do not support a legally cognizable claim for relief, the Court will grant dismissal. *See id.*

Under Federal Rule of Civil Procedure 9(b), a plaintiff alleging fraud must state with particularity the circumstances constituting fraud. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011). This requires that the plaintiff describe "the 'who, what, when, where, and how' of the fraud." *Id.* (quoting *Pirelli Armstrong Tire Corp. Riteree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011)). If the plaintiff's allegations fail to meet this heightened pleading standard, the court will dismiss claims of fraud. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 950 (7th Cir. 2013).

## II.     Discussion

### A.     Breach of Contract

Plaintiff alleges in Count I that Defendants breached the Purchase Agreements by failing to rehabilitate the property; failing to identify, screen, and secure tenants for the property ("Tenant Services"); and failing to fulfill their property-management obligations

("Property-Management Services"). Compl. ¶¶ 46-48. Defendants move to partially dismiss Plaintiff's breach of contract claim with respect to Tenant Services and Property-Management Services given that there are no terms related to those services in the Purchase Agreements. In addition, Defendants move to dismiss Plaintiff's breach of contract claim against Morris Invest in its entirety, because Morris Invest is not a signatory to either Purchase Agreement. We conclude that Plaintiff's contract claim with respect to Tenant Services and Property-Management Services must be dismissed, but Plaintiff's contract claim for rehabilitation of the property may proceed against both Defendants.

First, "Plaintiff concedes that the purchase agreements do not contain language directly relating to Defendants' provision of tenant-related and property management services." Pl.'s Resp. Opp'n, at 10. However, Plaintiff argues that this "does not negate the possibility that the parties entered into a valid agreement [related to these matters] at some point." *Id.* (Quoting *Neurology & Pain Mgmt. Assocs., P.C. v. Bunin*, No. 3:17-CV-035 JD, 2018 WL 3830059 at *3 (N.D. Ind. Aug. 13, 2018). Plaintiff contends that its allegations that Defendants promised to sell it "turnkey" property, Compl. ¶ 39, 41, raise questions of fact sufficient to survive a motion to dismiss. Pl.'s Resp. Opp'n, at 11.

Plaintiff's invocation of the word "turnkey" fails to save its claim, however, because its allegations are directly contradicted by the exhibits. Ex. 1; Ex. 2. "When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). Neither Purchase Agreement mentions the "turnkey" nature of the

5

property, Ex. 1; Ex. 2, nor do the Agreements contain any terms related to Tenant Services or Property-Management Services—as Plaintiff also concedes. Pl.'s Resp. Opp'n, at 10. Furthermore, the Agreements contain an integration clause, which provides that each Agreement "constitutes the sole and only agreement of the parties and supersedes any prior understandings or written oral agreements between the parties[] respecting the transaction and cannot be changed except by their written consent." Ex. 1, at 4; Ex. 2, at 4. Therefore, because the Agreements do not contain terms related to Tenant Services or Property-Management Services, Plaintiff's breach of contract claim based on Defendants' failure to provide such services requires dismissal.

Second, Defendants move to dismiss Plaintiff's contract claim in its entirety as against Morris Invest—which was not a signatory to the Purchase Agreements. Plaintiff responds that Morris Invest is bound by the acts of Clayton Morris, who was a signatory to both Agreements.

"It is a fundamental rule of agency law that the principal is bound by, and liable for, the acts of its agent done with or within the actual or apparent authority manifested by the principal, and within the scope of the agent's employment, or ratified by the principal." Williston on Contracts § 35:34. *See also Ford v. Williams*, 62 U.S. 287, 289 (1858) ("The contract of the agent is the contract of the principal, and he may sue or be sued thereon, though not named therein."). Here, Plaintiff has pleaded sufficient facts to support the inference that Clayton Morris signed the agreement as an agent of Morris Invest.

Plaintiff has alleged that Clayton Morris "is a co-founder and owner of Defendant Morris Invest," Compl. ¶ 9, and the Complaint alleges several ways in which Morris Invest was involved in the real-estate program which gave rise to the lawsuit. *Id.* ¶¶ 15-16. Morris Invest is also named in the Purchase Agreements in a non-disparagement clause.[5] In holding that Plaintiff may proceed with its breach of contract claim for rehabilitation of the property against both Clayton Morris and Morris Invest, we note that we are in lock step with other courts which have considered nearly identical claims involving the same Defendants. *See Alanann Property, LLC v. Morris Invest, LLC*, No. 1:19-cv-02674-JRS-TAB, 2020 WL 3402873, at *3 (S.D. Ind. June 19, 2020); *McLeskey v. Morris Invest, LLC*, No. 1:18-cv-02797-JPH-TAB, 2020 WL 3315996, at *3 (S.D. Ind. June 18, 2020).

### B.     Promissory Estoppel

In Count II, Plaintiff alleges a promissory estoppel claim based on Defendants' alleged promises to sell and rehabilitate the property, provide tenant-related services, manage the property, and collect rent checks for Plaintiff. Compl. ¶ 52. Defendants argue that Plaintiff's promissory estoppel claim should be dismissed because it sounds in fraud, which was not pleaded with particularity according to Rule 9(b), and because Indiana law does not permit claims for promissory estoppel based on a written contract between the parties. We agree that Plaintiff's promissory estoppel claim must be dismissed with

---

[5] The clause states: "Buyer agrees to not make any statements whether written or oral, that disparage, defame or otherwise libel Morris Invest or any of its affiliated companies or any of its current or former employees." Ex.1, at 4; Ex. 2, at 4.

7

respect to rehabilitation of the property because the contract claim for those services survives; however, Plaintiff may proceed with its promissory estoppel claim with respect to tenant and property-management services because it is pleaded with sufficient particularity and no contract claim for those services remains.

"Promissory estoppel permits recovery where no contract in fact exists." *Hinkel v. Sataria Distrib. & Packaging, Inc.*, 920 N.E. 2d 766, 771 (Ct. App. Ind. 2010) (citation omitted). Therefore, a promissory estoppel claim is "unwanted surplusage" and should be dismissed when it is based on promises allegedly made in a valid written contract between the parties. *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829, 848 (S.D. Ind. 2005).

Plaintiff's argument that it may plead in the alternative is of no avail. While it is true Plaintiff is permitted to plead in the alternative, Plaintiff has not, in fact, used language indicating that it intended to do so here. Although courts do not require plaintiffs to use "magic words" to plead in the alternative, "they must use a formulation from which it can be reasonably inferred that this is what they were doing." *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000) (citation omitted). "Either-or" or "if-then" statements are usually sufficient to indicate that a plaintiff intends to plead in the alternative, *McLeskey*, 2020 WL 3315996, at *3 (citation omitted), but Plaintiff has used no such formulation here. *See* Compl. ¶¶ 42-56. Therefore, Plaintiff has not pleaded in the alternative; rather, it has pleaded in tandem.

8

Because Indiana law does not permit promissory estoppel and breach of contract claims to be pleaded in tandem, and Plaintiff's breach of contract claim for rehabilitation of the property survives, Plaintiff's promissory estoppel claim based on the same conduct cannot survive alongside it. However, we dismissed Plaintiff's contract claim with respect to tenant and property-management services. Therefore, Plaintiff may proceed with its promissory estoppel claim with respect to those services so long as it has been alleged with sufficient particularity.

A claim that "sounds in fraud" may implicate the heightened pleading requirements of Rule 9(b). *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Plaintiff's promissory estoppel claim is premised on an alleged pattern of fraudulent conduct; therefore, it must be pleaded with particularity. *Alanann*, 2020 WL 3402873, at *4. This requires that the plaintiff describe "the 'who, what, when, where, and how' of the fraud." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (quoting *Pirelli Armstrong Tire Corp. Riteree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011)).

Here, we hold that Plaintiff has pleaded its promissory estoppel claim for tenant and property-management services with sufficient particularity. Plaintiff has alleged the who (Glenn Radford, Defendants' representative); the what (Defendants would find, screen, and secure tenants and provide property-management services); the how and where (through emails, phone calls, podcasts, and videos); and the when (March 2018). Compl. ¶ 3, 41; *see also Alanann*, 2020 WL 3402873, at *4 (holding promissory estoppel

9

claim for tenant and property-management services was alleged with particularity on nearly identical facts). It is reasonable to infer that Plaintiff would not have purchased the property if Defendants had not promised to provide tenant and property-management services. *See Alanann*, 2020 WL 3402873, at *4. Therefore, Plaintiff may proceed with its promissory estoppel claim based on Defendants' alleged promises to provide tenant and property-management services.

      **C.**      **Fraud/Deception**

Plaintiff next alleges in Count III that Defendants committed fraud by "knowingly and intentionally [making] false statements of important existing facts, namely, that Morris Invest and Clayton Morris would sell the Rental Property to Plaintiff, rehabilitate the property, identify tenants, screen tenants, secure tenants, manage the Rental Property, and provide rent checks to Plaintiff." Compl. ¶ 58. Defendants argue that: (1) Plaintiff does not allege fraud with particularity as required by Rule 9(b); (2) Plaintiff's allegations of misrepresentations relate to statements of future conduct and therefore cannot support a claim for fraud; and (3) Plaintiff's fraud claim is not distinct from its contract claim. Because as we explain below Plaintiff's fraud/deception claim is based on non-actionable statements of future conduct or opinion and is also an impermissible repackaging of its contract claim, we need not reach the question of whether it is alleged with particularity.

First, under Indiana law, "[i]ntentional fraud occurs when there is 'a material misrepresentation of past or existing fact made with knowledge of or reckless disregard for the falsity of the statement, and the misrepresentation [is] relied upon to the detriment

10

of the relying party.'" *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E. 2d 664, 675 (Ind. 1997) (quoting *Adoptive Parents of M.L.V. v. Wilkens*, 598 N.E. 2d 1054, 1058 (Ind.1992)). Where a claim of actual fraud is not based on existing fact, but on "representations of future conduct, on broken promises, or on representations of existing intent that are not executed," the claim is not actionable under Indiana law. *Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E. 2d 1110, 1115 (Ind. Ct. App. 2008), as modified (Nov. 13, 2008) (citing *Wallem v. CLS Indus., Inc.*, 725 N.E.2d 880, 889 (Ind. Ct. App. 2000)).

    Here, all of Plaintiff's allegations relate to representations of existing intent—not existing facts. Plaintiff allege that Defendants represented the property "*would* be rehabbed by Morris Invest";[6] that "Defendants *would* find, screen, and secure tenants for each of the Rental Property";[7] that "Plaintiff *would* receive a 'turnkey' Rental Property";[8] and that Defendants "*would* . . . manage the Rental Property, and provide rent checks to Plaintiff."[9] These are "textbook examples of statements regarding future conduct." *BN Invest, LLC v. Morris Invest, LLC*, No. 1:19-cv-02675-JMS-TAB, [Docket No. 27], at 16 (S.D. Ind. April 28, 2020); *see also Alanann*, 2020 WL 3402873, at *5 (holding that identical allegations of promises were statements of future conduct). Because Plaintiff's fraud claim is "predicated upon a promise to do a thing in the future," *Sachs v. Blewett*,

---

[6] Compl. ¶ 26 (emphasis added).
[7] *Id.* ¶ 27 (emphasis added).
[8] *Id.* ¶ 28 (emphasis added).
[9] *Id.* ¶ 58 (emphasis added).

185 N.E. 856, 858 (Ind. 1933), it is not actionable—even if Defendants had no intent of fulfilling the promises. *Id.*

Even if Plaintiff's fraud claim were not predicated upon representations of future conduct, it is still an impermissible repackaging of its contract claim. Indiana law requires a claimant who brings both a breach of contract and a fraud claim to prove that "(1) the breaching party committed the separate and independent tort of fraud; and (2) the fraud resulted in injury distinct from that resulting from the breach." *Tobin v. Ruman*, 819 N.E. 2d 78, 87 (Ct. App. Ind. 2004) (citations omitted). If the claimant cannot prove the fraud claim is distinct from the contract claim and that it caused a distinct injury, the fraud claim should be dismissed. *See Fritzinger v. Angie's List, Inc.*, No. 1:12–cv–01118–JMS–DML, 2013 WL 772864, at *2-4 (S.D. Ind. 2013) (dismissing deception claim because plaintiff failed to allege that the deception resulted in an injury distinct from the injury sustained from the alleged breach of contract).

In Plaintiff's breach of contract claim, it alleges that Defendants promised to "sell the Rental Property to Plaintiff, rehabilitate the property, identify tenants, screen tenants, secure tenants, manage the Rental Property, and provide rent checks to Plaintiff." Compl. ¶ 43. Plaintiff alleges that it was injured when Defendants breached the Purchase Agreements by failing to fulfill any of these alleged obligations. *Id.* ¶¶ 46-48. In its fraud claim, Plaintiff alleges that Defendants represented that they would "sell the Rental Property to Plaintiff, rehabilitate the property, identify tenants, screen tenants, secure tenants, manage the Rental Property, and provide rent checks to Plaintiff." *Id.* ¶ 58. When these alleged representations turned out to be false, Plaintiff was injured. *Id.* ¶ 63.

12

Identical conduct underlies both the contract and the fraud claim, resulting in an identical injury from each. *See McLeskey*, 2020 WL 3315996, at *4. Therefore, we hold that Plaintiff's fraud claim is merely a repackaging of its contract claim and is accordingly dismissed.

### D. Conversion

In Count IV, Plaintiff brings a tort claim for conversion alleging that "Defendants converted the funds provided by Plaintiff to Defendants specifically and expressly for the purpose of rehabilitation of the Rental Property." Compl. ¶ 68. Defendants moved to dismiss the conversion claim because Indiana does not allow conversion claims alongside breach of contract claims, and the funds at issue are not a special chattel. We dismiss this claim because the conversion claim is, again, simply a repackaged version of Plaintiff's contract claim; therefore, we do not reach the question of whether the funds at issue constitute a special chattel.

Indiana does not allow claims for conversion in contract disputes. *Clark-Silberman v. Silberman*, 78 N.E. 3d 708, 715 (Ind. Ct. App. 2017) (citation omitted); *Korellis Roofing, Inc. v. N. Cross Roofing & Waterproofing, Inc.*, No. 2:17-CV-212, 2017 WL 4407925, at *3 (N.D. Ind. Oct. 4, 2017) (dismissing conversion claim because plaintiff has not "alleged any acts independent of the underlying contract dispute that could reasonably be construed as a separate and independent tort of conversion"). Plaintiff's only response to this argument is to point out that it is permitted to plead in the alternative. Pl.'s Resp. Opp'n, at 21-22. However, as previously discussed in the context

13

of Plaintiff's promissory estoppel claim, Plaintiff has not used any language that indicates it intended to plead in the alternative. *See* Compl. ¶¶ 66-75. Plaintiff's conversion claim is not independent of its contract claim, and it failed to plead in the alternative; therefore, Plaintiff's conversion claim is dismissed.[10]

### E. Negligence

In Count V, Plaintiff alleges that "Defendants owed a duty to the Plaintiff to properly screen, hire, retain, and supervise the company [they] engaged to perform the services [they] promised Plaintiff," Compl. ¶ 77, and "Defendants owed a duty to Plaintiff to take appropriate steps and implement appropriate measures and policies to learn of and correct Oceanpointe's and other entities' failure to [perform the services] promised by Defendants to Plaintiff." *Id.* ¶ 79. Plaintiff alleges that Defendants breached these duties and Plaintiff was injured as a result. *Id.* ¶¶ 78, 80-82. Defendants moved to dismiss Plaintiff's negligence claims on the grounds that they owed no duties to Plaintiff and because Plaintiff alleges only economic loss. We agree with Defendants, and now dismiss.

Plaintiff appears to allege a negligent retention and supervision claim, which has three elements under Indiana law: "1) a duty of care owed by an employer to a third person; 2) breach of that duty; and 3) injury to the third person proximately caused by the

---

[10] In fact, Plaintiff may have waived any argument to the contrary by failing to respond. *See* Pl.'s Resp. Opp'n, at 21-22; *Alanann*, 2020 WL 3402873, at *6; *BN Invest*, No. 1:19-cv-02675-JMS-TAB, at 18-19. Regardless, in a case involving the same defendants and the same alleged investment scheme, another court in this district determined that the plaintiffs failed to identify a special chattel and accordingly dismissed the conversion claim. *McLeskey*, 2020 WL 3315996, at *5.

14

employer's breach." *Scott v. Retz*, 916 N.E. 2d 252, 257 (Ind. Ct. App. 2009) (citation omitted). However, Plaintiff has not alleged facts sufficient to support the inference that there exists a master/servant or employer/employee relationship between Defendants and Oceanpointe or "other entities." Defendants' relationship with Oceanpointe and the other unnamed entities is never clearly alleged,[11] and there are no allegations from which the court could infer that Defendants had the power to hire, fire, or otherwise supervise Oceanpointe or the other entities.[12] Without such a relationship, there is no duty owed by Defendants to Plaintiff. *See Alanann*, 2020 WL 3402873, at *6; *BN Invest*, No. 1:19-cv-02675-JMS-TAB, at 22.

Even if there were a duty owed by Defendants, Plaintiff's claim is solely for economic loss. Under Indiana law, a defendant is "not liable under a tort theory for any purely economic loss caused by its negligence." *Indianapolis-Marion Cty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E. 2d 722, 726-27 (Ind. 2010). Here, Plaintiff has alleged that it purchased the property for $72,500 and $51,500, respectively, and then

---

[11] At one point, Plaintiff refers to Oceanpointe or the other entities as "affiliates" of Defendants. Compl. ¶ 17. At another point, these entities are alleged to be in a "partnership" with Defendants. *Id.* ¶ 23. Finally, Plaintiff alleges that the entities are "controlled" by Defendants. *Id.* ¶ 63. These allegations do not concretely allege the relationship between Defendants and Oceanpointe and fail to provide a sufficient basis from which the court could infer that the requisite employer-employee relationship exists. This result is consistent with other courts. *See BN Invest*, No. 1:19-cv-02675-JMS-TAB, at 21 n.9.

[12] Plaintiff does include in its Complaint an anonymous email, apparently from Clayton Morris, appearing to state that Morris Invest owns Oceanpointe. Compl. ¶ 20. Yet, Plaintiff never alleges that it received this email or that Clayton Morris or Morris Invest in fact own Oceanpointe. That omission appears intentional, because the email is evidently from another case involving the same Defendants. *See Alanann*, 2020 WL 3402873, at *2.

15

later sold those property at losses of $52,111 and $37,477. Compl. ¶ 41. This is purely economic loss. *See McLeskey*, 2020 WL 3315996, at *6.

Furthermore, to the extent that Plaintiff alleges physical damage to the property as a result of Defendant's alleged negligence, the property is subject to a contractual agreement and "contract law governs damage to the product or service itself." *Indianapolis-Marion Cty. Pub. Library*, 929 N.E. 2d at 731 (quoting *Gunkel v. Renovations, Inc.*, 822 N.E. 2d 150, 153 (Ind. 2005)); *see also McLeskey*, 2020 WL 3315996, at *6. Therefore, Plaintiff's negligent retention and supervision claim is dismissed.

### F.     Indiana Deceptive Consumer Sales Act

Finally, in Count VI, Plaintiff claims that Defendants have violated the Indiana Deceptive Consumer Sales Act (IDCSA), alleging that "Defendants intentionally and materially misrepresented to Plaintiff the nature of the program offered by Defendants and the nature of the investment products sold to Plaintiff." Compl. ¶ 91. Defendants moved to dismiss because the alleged sales are not "consumer transactions" under the IDCSA, and real property transactions are excluded from an individual's private right of action under the Act. We conclude that neither sale is a consumer transaction under the IDCSA and do not reach the issue of whether the transaction at issue is excluded from a private right of action under the IDCSA.

The IDCSA prohibits unfair, abusive, or deceptive acts, omissions, or practices "in connection with a consumer transaction." Ind. Code § 24-5-0.5-3. The act defines a

"consumer transaction" as "a sale, lease, assignment, award by chance, or other disposition of an item of personal property, real property, a service, or an intangible . . . to a person for purposes that are primarily personal, familial, charitable, agricultural, or household." Ind. Code § 24-5-0.5-2(a)(1).

The sales of investment property at issue here do not constitute consumer transactions, because the purchases were for primarily commercial purposes—not "purposes that are primarily personal, familial, charitable, agricultural, or household." *Id.* Plaintiff straightforwardly alleges that the property here were purchased "for the purpose of generating 'passive' rental income to Plaintiff." Compl. ¶ 25. The Complaint repeatedly refers to the property as "investment property." *Id.* ¶¶ 6, 10, 13. Not once does Plaintiff allege that the property were purchased for primarily personal, familial, charitable, or household purposes. In short, the purchases here are simply not consumer transactions under the IDCSA; therefore, the Act does not apply to these transactions.[13] *See LEJ Management, LLC v. Morris Invest, LLC*, No. 1:19-cv-02662-TWP-TAB, 2020 WL 5095450, at *10 (S.D. Ind. Aug. 28, 2020) (dismissing plaintiff's claim under the IDCSA because property was purchased for investment purposes and was therefore not a consumer transaction); *see also Alanann*, 2020 WL 3402873, at *7 (same); *McLeskey*, 2020 WL 3315996, at *7 (same). Accordingly, Plaintiff's claim under the IDCSA is dismissed.

---

[13] Plaintiff's reliance on *Watkins v. Alvey* is misplaced. *See* 549 N.E. 2d 74, 78 (Ind. Ct. App. 1990). In that case, the court considered only whether defendants were "suppliers" under the IDCSA. *Id.* at 75-78.

## III.     Conclusion

For the reasons detailed above, we GRANT IN PART and DENY IN PART Defendants' Partial Motion to Dismiss [Docket No. 17].

Defendants' Partial Motion to Dismiss is GRANTED with respect to Plaintiff's breach of contract claim for tenant services and property-management services, its promissory estoppel claim for rehabilitation of the property, its fraud/deception claim, its conversion claim, its negligence claim, and its claim based on the IDCSA.

Defendants' Partial Motion to Dismiss is DENIED with respect to Plaintiff's breach of contract claim for rehabilitation of the property, its breach of contract claim against Morris Invest in its entirety, and its promissory estoppel claim for tenant services and property-management services. Plaintiff may proceed against both Defendants with respect to these claims.

IT IS SO ORDERED.

Date:    9/29/2020

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Molly Elizabeth Harkins
HOOVER HULL TURNER LLP
mharkins@hooverhullturner.com

David J. Hensel
HOOVER HULL TURNER LLP
dhensel@hooverhullturner.com

Anne Medlin Lowe
RILEY WILLIAMS & PIATT, LLC
alowe@rwp-law.com

Amanda L.B. Mulroony
HOOVER HULL TURNER LLP
amulroony@hooverhullturner.com

James Piatt
RILEY WILLIAMS & PIATT, LLC
jpiatt@rwp-law.com